941 So.2d 396 (2006)
MERIN HUNTER CODMAN, INC., Appellant,
v.
WACKENHUT CORRECTIONS CORPORATION, Appellee.
No. 4D05-3337.
District Court of Appeal of Florida, Fourth District.
September 20, 2006.
*397 James S. Telepman of Cohen, Norris, Scherer, Weinberger & Wolmer, North Palm Beach, for appellant.
Jane Kreusler-Walsh of Jane Kreusler-Walsh, P.A. and Sidney A. Stubbs and Roberto M. Vargas of Jones, Foster, Johnston & Stubbs, P.A., West Palm Beach, for appellee.
PER CURIAM.
Merin Hunter Codman, Inc., a real estate broker, sued Wackenhut Corrections Corporation (WCC) for breach of contract and breach of implied covenant of good faith, seeking a commission pursuant to an exclusive sublease agreement to locate a tenant. The trial court entered final summary judgment in favor of WCC on both counts. We reverse because we find that based on the undisputed facts and the parties' agreement, Merin Hunter is entitled to its commission.
Merin Hunter and WCC entered into a one-year Exclusive Right to Sublease Agreement (Sublease Agreement) whereby Merin Hunter was to obtain a sublessee for space WCC leased from WCC's parent company, the Wackenhut Corporation. The term of the Sublease Agreement began October 31, 2002, and could be cancelled at any time beginning April 30, 2003, upon thirty-days written notice. The pertinent provisions of the Sublease Agreement *398 provided that "[i]f at any time during the term of this agreement a surrender or cancellation (including a surrender or cancellation by virtue of landlord exercising any right to recapture or require a surrender or cancellation) of the Sublessor's lease for the Premises, upon any terms shall be entered into by reason of any efforts during the term of this Agreement," Merin Hunter would be entitled to "[o]ne full commission . . . based upon the outstanding valuation of Sublessor's remaining Leased obligation as of the date of surrender or cancellation."
On April 30, 2003, WCC entered into a share purchase agreement with the Wackenhut Corporation, providing that WCC's lease would terminate when the share purchase agreement closed. Although the share purchase agreement did not specify a closing date, WCC's general counsel testified the closing was initially scheduled to occur on July 9, 2003. On June 11, 2003, WCC informed Merin Hunter that the Sublease Agreement would terminate on July 11, 2003. Before the Sublease Agreement ended, WCC entered into an amended share purchase agreement that provided the closing would occur after July 11, 2003. The trial court found WCC did not breach the Sublease Agreement or the implied covenant of good faith by amending the share purchase agreement and refusing to pay a commission because the parties contemplated "such cancellation and avoidance of the commission."
"`The elements of a breach of contract action are: (1) a valid contract; (2) a material breach; and (3) damages.'" J.J. Gumberg Co. v. Janis Servs., Inc., 847 So.2d 1048, 1049 (Fla. 4th DCA 2003) (quoting Abbott Lab., Inc. v. Gen. Elec. Capital, 765 So.2d 737, 740 (Fla. 5th DCA 2000)). When determining whether WCC breached the Sublease Agreement, we are not bound by the trial court's interpretation of that document. See Khosrow Maleki, P.A. v. M.A. Hajianpour, M.D., P.A., 771 So.2d 628, 631 (Fla. 4th DCA 2000) ("The interpretation of a contract is a question of law and an appellate court is not restricted in its review powers from reaching a construction contrary to that of the trial court."). We previously held that "`[t]he language used in a contract is the best evidence of the intent and meaning of the parties.'" Jenne v. Church & Tower, Inc., 814 So.2d 522, 524 (Fla. 4th DCA 2002) (quoting Boat Town U.S.A., Inc. v. Mercury Marine Div. of Brunswick Corp., 364 So.2d 15, 17 (Fla. 4th DCA 1978)). Thus, "[w]here words of a contract are clear and definite, they must be understood according to their ordinary meaning." Institutional & Supermarket Equip., Inc. v. C & S Refrigeration, Inc., 609 So.2d 66, 68 (Fla. 4th DCA 1992).
In applying those established principles to the case before us, we find the Sublease Agreement clear and unambiguous. As such, we are required to construe that document as written. Pursuant to the Sublease Agreement, WCC was obligated to pay Merin Hunter a commission if WCC entered into an agreement during the term of the Sublease Agreement "upon any terms" to cancel its lease. The April 30, 2003 share purchase agreement between WCC and Wackenhut, which was undisputedly entered into during the term of the Sublease Agreement between WCC and Merin Hunter, specifically called for a cancellation of WCC's lease of the subject property. Accordingly, Merin Hunter became entitled to a commission when WCC executed the share purchase agreement on April 30, 2003, because that is when WCC "upon any terms . . . entered into" a cancellation of the lease.[1]
*399 Having found that WCC breached the contract, we next address the trial court's determination that WCC did not breach the implied covenant of good faith. This court recognizes that "every contract includes an implied covenant that the parties will perform in good faith." County of Brevard v. Miorelli Eng'g, Inc., 703 So.2d 1049, 1050 (Fla.1997). "This covenant is intended to protect `the reasonable expectations of the contracting parties in light of their express agreement.'" Ins. Concepts & Design, Inc. v. Healthplan Servs., Inc., 785 So.2d 1232, 1234 (Fla. 4th DCA 2001) (quoting Barnes v. Burger King Corp., 932 F.Supp. 1420, 1438 (S.D.Fla.1996)). It is clear WCC amended the share purchase agreement to prevent the lease's termination from becoming effective before the Sublease Agreement ended in order to subvert the commission clause. In light of the foregoing, we similarly hold that WCC breached the implied covenant of good faith. Accordingly, we reverse the final judgment and remand this matter for the trial court to consider the calculation of damages.
Reversed.
STEVENSON, C.J., SHAHOOD and MAY, JJ., concur.
NOTES
[1] Even were we to conclude that cancellation of the lease was only "entered into" on the date that WCC and Wackenhut agreed the share agreement was to close, we still would find WCC liable to pay the commission. The original share purchase agreement entered into between WCC and Wackenhut on April 30, 2003, did not specify a closing date, but WCC's general counsel testified at a deposition that the closing was initially scheduled to occur on July 9, 2003both dates falling within the term of the Sublease Agreement.